DA 07-0451

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 75

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

ANDREW LEE TYLER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 05-1136
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Shannon McDonald, Assistant
            Appellate Defender, Helena, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; David Ole Olson, Assistant
            Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney; Christopher A. Morris,
            Deputy County Attorney, Billings, Montana

Submitted on Briefs: June 4, 2008

Decided: March 17, 2009

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Pursuant to a plea agreement, Andrew Lee Tyler pled guilty to partner family member assault in the Thirteenth Judicial District Court, Yellowstone County. Before he was sentenced, Tyler moved to withdraw his guilty plea, claiming he discovered new evidence, and thus good cause existed for the District Court to grant his motion. The District Court denied his motion. Tyler appeals.

¶2 The sole issue on appeal is whether the District Court erred in concluding good cause did not exist to grant Tyler's motion to withdraw his guilty plea.

¶3 In December 2005, police responded to a report of a disturbance at Lori Williams' residence. Williams told the officers her boyfriend, Tyler, struck her in the face. She stated Tyler also pushed and kicked her and showed the officers an abrasion on her leg. Williams said she chased Tyler off with her shotgun. While on scene, one of the officers witnessed Tyler toss a glass pipe onto a chair.

¶4 The State charged Tyler with one count of partner or family member assault and one count of criminal possession of drug paraphernalia. Tyler initially pled not guilty to both counts.

¶5 A couple of weeks later, Williams met with a deputy county attorney and an investigator employed by the public defender's office who was working with Tyler's attorney. During this interview, Williams told Tyler's investigator that he did not hit her, she did not want to press charges, and she wanted the charges against Tyler dropped.

¶6      Three months later, Tyler pled guilty, pursuant to a plea agreement. During the colloquy with the judge at the change of plea hearing, Tyler confirmed he entered the plea agreement and waiver of rights "freely and voluntarily." Tyler then admitted he had been in possession of drug paraphernalia and that he struck Williams "in the face in violation of the law." The District Court accepted Tyler's guilty plea and scheduled a sentencing hearing.

¶7      Williams appeared at Tyler's sentencing hearing and requested to speak to the court. She essentially reiterated what she told the investigator a few months earlier—she started the argument, the police misquoted her allegations that Tyler hit her, Tyler did not hit her, and she did not have any marks on her body. Even after the court asked her to step down, she continued, "Andrew didn't hit me. He actually refrained and I want to give him credit for that. He has a good heart and he is a good man." She then asked the court to lift the "no-contact order" so she and Tyler could resume their friendship.

¶8      After Williams' testimony, the State outlined its recommendations for both counts. However, the court continued the hearing before it imposed its sentence because of a misunderstanding concerning the drug paraphernalia charge. When the sentencing hearing reconvened, Tyler made an oral motion to withdraw his guilty plea, claiming his innocence. Tyler said he pled guilty because he received legal advice to the effect that if he did so, he would not have to go to jail. According to Tyler, the court should allow him to withdraw his guilty plea because good cause was established when Williams recanted from the witness stand at the beginning of the hearing, constituting new evidence.

3

¶9 The District Court denied Tyler's motion concluding that he pled guilty voluntarily and knowingly and that Williams' testimony was not new evidence because it could have been discovered with any amount of diligence simply by interviewing Williams. Tyler appeals, again arguing that Williams' testimony at the sentencing hearing is new evidence establishing good cause to withdraw his guilty plea.

¶10 This Court reviews a district court's denial of a motion to withdraw a guilty plea de novo because whether a plea was entered voluntarily is a mixed question of law and fact. *State v. Warclub*, 2005 MT 149, ¶ 17, 327 Mont. 352, 114 P.3d 254.

¶11 "A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent." *State v. Lone Elk*, 2005 MT 56, ¶ 13, 326 Mont. 214, 108 P.3d 500; *Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 1609 (1998) (internal quotes omitted). The ultimate test for withdrawal of a guilty plea is whether it was voluntary. *Lone Elk*, ¶ 14.

¶12 Section 46-16-105(2), MCA, permits withdrawal of a plea of guilty if good cause is shown. In addition to voluntariness, the discovery of new evidence may be considered good cause. *Lone Elk*, ¶ 19 (citing *United States v. Turner*, 898 F.2d 705, 713 (9th Cir. 1990) (determining "fair and just" reasons for withdrawal of guilty pleas include an inadequate colloquy, "newly discovered evidence, intervening circumstances or any other reason for withdrawing his guilty plea that did not exist when he pleaded guilty") (internal quotations omitted)).

4

¶13 Tyler argues, without citation to authority, that because Williams' statements at the sentencing hearing were under oath and on the official court record, they constitute new evidence. This, according to Tyler, is because Williams' statements made in court somehow carry more weight than her initial story to the police made just after the incident in question. Not only is this argument illogical, we do not consider unsupported arguments and are under no obligation to do legal research for a party. *State v. Humphrey*, 2008 MT 328, ¶ 12, 346 Mont. 150, 194 P.3d 643.

¶14 In *State v. Clark*, 2005 MT 330, ¶ 34, 330 Mont. 8, 125 P.3d 1099, we set forth five factors which are considered in analyzing a motion for a new trial based on newly discovered evidence:

(1) the evidence must have been discovered since the defendant's trial;
(2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;
(3) the evidence must be material to the issues at trial;
(4) the evidence must be neither cumulative nor merely impeaching; and
(5) the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome.

We extended use of these same factors to consideration of petitions for postconviction relief based on newly discovered evidence in *Crosby v. State*, 2006 MT 155, ¶ 20, 332 Mont. 460, 139 P.3d 832. In this case, we utilize the *Clark* factors to determine whether Tyler presented newly discovered evidence sufficient to establish good cause to withdraw his guilty plea.

¶15 Under the first *Clark* factor, we consider whether Tyler knew before he pled guilty that Williams recanted her allegations that he assaulted her. Nowhere in the record before the District Court or in this Court does either Tyler or his attorneys unequivocally state Tyler

5

was unaware Williams recanted before he pled guilty. In his brief filed in this Court, appellate counsel, rather than clearly stating what trial counsel's file shows, merely says counsel for Tyler could have, and "probably did" interview Williams. The District Court record contains an affidavit from Tyler's investigator stating Williams met with her months before Tyler pled guilty and Williams recanted at that time. From the record before this Court, we must conclude Tyler was well aware Williams recanted before he pled guilty. Thus, the fact that she had done so is not newly discovered evidence. *Clark*, ¶ 34.

¶16    Neither Tyler nor his trial counsel informed the District Court his investigator took a statement from Williams wherein she recanted before Tyler pled guilty. Rather than being candid with the District Court, Tyler based his motion to withdraw his guilty plea on the misleading argument that good cause existed because Williams recanted on the witness stand at the sentencing hearing. Nevertheless, the District Court concluded Tyler failed to establish good cause to withdraw his guilty plea, based on newly discovered evidence, because the alleged new evidence could easily have been discovered with any amount of diligence by simply interviewing Williams. Under the circumstances, the District Court was justified in denying Tyler's motion to withdraw his guilty plea.

¶17    The record clearly shows Tyler entered his guilty plea voluntarily and that he presented no new evidence to the District Court showing good cause to withdraw his guilty plea. The District Court did not err in denying Tyler's motion to withdraw his guilty plea.

¶18    Affirmed.

6

/S/ JOHN WARNER


We Concur:


/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS